## UNITED STATES v. BRESSI.

### (District Court, W. D. Washington, N. D.    September, 1913.)

### No. 2,546.

1. PERJURY (§ 11*)—FALSE SWEARING IN NATURALIZATION CASES—NECESSITY THAT TESTIMONY BE MATERIAL.

To constitute a crime under Cr. Code, § 80 (Act March 4, 1909, c. 321, 35 Stat. 1103 [U. S. Comp. St. Supp. 1911, p. 1612]), which provides that "whoever, in any proceeding under or by virtue of any law relating to the naturalization of aliens shall knowingly swear falsely in any case where an oath is made or affidavit taken shall be fined," etc., the testimony given must be material.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 38–54; Dec. Dig. § 11.*]

2. PERJURY (§ 11*)—FALSE SWEARING IN NATURALIZATION CASES—MATERIALITY OF TESTIMONY.

Testimony given by an applicant for naturalization on the hearing of his petition that he was never arrested nor imprisoned in his native country, and never committed a crime there, is material and, if knowingly false, constitutes perjury under Cr. Code, § 80 (Act March 4, 1909, c. 321, 35 Stat. 1103 [U. S. Comp. St. Supp. 1911, p. 1612]).

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 38–54; Dec. Dig. § 11.*]

Criminal prosecution by the United States against Joseph Bressi. On demurrer to indictment. Overruled as to the first count and sustained as to the second.

C. F. Riddell and John J. Sullivan, both of Seattle, Wash., for plaintiff.

Vanderveer & Cummings and Robert Welch, all of Seattle, Wash., for the United States.

NETERER, District Judge. The grand jury returned an indictment against the defendant in two counts. Count 1 recites in substance that the defendant, being a citizen of Italy, filed in the superior court of the state of Washington a petition in writing, signed by himself, applying to be naturalized as and become a citizen of the United States of America under the provisions of the naturalization laws; and thereafter such proceedings were had that the matter came on regularly for hearing, and upon the hearing:

"The said Joseph Bressi being then and there so sworn on his oath as aforesaid, did then and there willfully, unlawfully, knowingly, feloniously, and corruptly depose and say in substance and effect that he had never been convicted of any crime in the old country and had never been arrested in the old country, meaning by the words 'old country' Italy, the country from whence he came, which statements of the said Joseph Bressi were given by question and answer in words and figures as follows, to wit:

"'Q. Did you ever have any trouble in the old country? A. No, sir.

"'Q. Were you ever arrested in the old country? A. No, sir.

"'Q. You never had any trouble with any of the authorities in the old country before you came here? A. No, sir; I never did. * * *

"'Q. I ask you again, were you ever arrested charged with any crime or violation of the law in Italy, in your native land? A. No, sir; I never was.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"'Q. Is it not a fact that in the old country you were arrested and convicted for homicide in the old country, killing a man? A. No, sir.

"'Q. Did you ever serve any time in prison in the old country? A. No, sir.

"'Q. Were you ever arrested in the old country for carrying a stiletto? A. No, sir.'

"That in truth and in fact, as he, the said Joseph Bressi, well knew at the time of making said statements as aforesaid, the said Joseph Bressi had had trouble with the authorities and had been arrested in the old country charged with a violation of the law of Italy and had been convicted in Italy for killing a man and had served time in prison in Italy."

In count 2 the defendant is charged with perjury upon the hearing of his said petition for citizenship, as follows:

"The said Joseph Bressi, being then and there so sworn, on his oath as aforesaid did * * * corruptly depose and say in substance * * * that the said Frank Bressi had never had any trouble in the old country and had never been arrested or had any trouble with the authorities in the old country, meaning by the words 'old country' Italy, * * * which statements * * * were given * * * as follows, to wit:

"'Q. Did your brother, Frank, ever have any trouble in the old country? A. No, sir.

"'Q. He never was arrested or never had any trouble with the authorities in the old country? A. No, sir.'"

It is then alleged that the said statements were false and known to be false by the said defendant. The defendant "demurs to the indictment therein and to each count of said indictment on the ground that the same does not state facts sufficient to constitute an offense."

It is contended on the part of the defendant that the testimony which was sought from this witness and concerning which he was interrogated was not material to the issue then before the court, and, not being material, perjury cannot be predicated upon the answers.

[1] This indictment is prosecuted under section 80 of the Penal Code, approved March 4, 1909, which seems to be a re-enactment of section 5393, U. S. R. S. (U. S. Comp. St. 1901, p. 3654), and reads:

"Whoever, in any proceeding under or by virtue of any law relating to the naturalization of aliens, shall knowingly swear falsely in any case where on oath is made or affidavit taken, shall be fined. * * *"

Other enactments with relation to the giving of false testimony are section 23 of the Act of June 29, 1906 (34 Stat. 603, c. 3592 [U. S. Comp. St. Supp. 1911, p. 539]), which provides that any person "who in any naturalization proceeding knowingly procures or gives false testimony *as to any material fact,* * * * required to be proved in such proceedings, shall be fined," etc.

Section 341 of the Penal Code provides:

"All other sections and parts of sections * * * so far as they are embraced within and superseded by this act are hereby repealed."

It is suggested that the act of 1906, using the phrase "as to any material fact," manifests a desire on the part of Congress to amend section 5395 of the U. S. R. S. (U. S. Comp. St. 1901, p. 3654), and requires that all testimony to be the subject of perjury must be material. It is in reply suggested on the part of the government that, if such intent was manifest in 1906, the requirement of section 5395 being re-

enacted in 1909 manifests an intent to omit the phrase "as to any material fact," and make false swearing in a court proceeding perjury whether material or not. I think the use of this phrase in the section above quoted is immaterial, in view of the fact that the courts have uniformly held, in considering section 5395 and section 23 of the 1906 act, that the testimony must be material. Section 80 of the Penal Code must be considered in the light of this conclusion, and it remains to determine whether the examination of the defendant upon the hearing in question was material. Section 4, subd. 4, of chapter 3592, U. S. St. at L. vol. 34, among other things, provides:

"In addition to the oath of the applicant, the testimony of at least two witnesses, citizens of the United States, as to the facts of residence, moral character, and attachment to the principles of the Constitution shall be required, and the name, place of residence and occupation of each witness shall be set forth in the record."

Section 6 of the same chapter provides:

"That petitions for naturalization may be made and filed during term time or vacation of the court and shall be docketed the same day as filed, but final action thereon shall be had only on stated days, to be fixed by rule of the court."

Section 4 of the same chapter, subd. 4, provides:

"It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States five years at least, and within the state or territory where such court is at the time held one year at least, *and that during said time he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same.*"

[2] The defendant contends that the phrase "during said time he has behaved as a man of good moral character" limits the inquiry, and that any examination of the applicant prior to that time is immaterial, and cites U. S. v. Grottkau (D. C.) 30 Fed. 672; U. S. v. Severino (C. C.) 125 Fed. 949; In re Ross (C. C.) 188 Fed. 685; In re Hopp (D. C.) 179 Fed. 561; U. S. v. Dupont (D. C.) 176 Fed. 823; In re Di Clerico (D. C.) 158 Fed. 905; U. S. v. Bedgood (D. C.) 49 Fed. 54; U. S. v. Singleton (D. C.) 54 Fed. 488; U. S. v. Maid (D. C.) 116 Fed. 650.

These cases are all readily distinguishable from the facts in this case. U. S. v. Grottkau (D. C.) 30 Fed. 672, was a proceeding under R. S. U. S. § 2165 (U. S. Comp. St. 1901, p. 1329) "that the oath of the applicant shall be in no case allowed to prove his residence"; and U. S. v. Dupont (D. C.) 176 Fed. 823, was a prosecution under the same provision. District Judges Bean and Dyer both held that the oath administered in each case was extrajudicial and perjury could not be predicated thereon. U. S. v. Severino (C. C.) 125 Fed. 949, was predicated upon false statement required by New York law in addition to the testimony of the applicant under act of Congress, and it was held that the oath was extrajudicial. In Re Ross (C. C.) 188 Fed. 685, an alien had been convicted of murder in the second degree, but his conduct for more than five years had been good. He was not admitted to citizenship. In Re Di Clerico (D. C.) 158 Fed. 905, an applicant had made

use of a certificate of naturalization previously issued to him after knowledge that he was not entitled thereto, and, until it was canceled, the court held he was not entitled to apply for naturalization again until the expiration of five years. Each and every case cited by defendant are in like manner distinguishable from the case at bar.

The naturalization act makes the applicant for citizenship a witness in his own behalf. His testimony as to being attached to the principles. of the Constitution of the United States and his disposition with relation to our theory of government, and his position in and relation to society and beliefs pertaining to organized government, and disposition as to public officers, is the very essence of the inquiry. These are matters of growth and development, and a conclusion as to some of these requirements can only be arrived at by a discovery of the mental relation and bearing as to these functions and institutions; and any condition or practices of the applicant during his previous life would be material as bearing upon the truthfulness of the statements made. The examination, since the applicant is a witness in his own behalf, should not be limited to the time within which he may have resided in the United States, but should cover a broader period of his life, as that would be a very material criterion by which the court could judge his present and probable future conduct. It would be material to know the sacredness with which human life is regarded, his relation to organized society pertaining to governmental functions, and, if such examination should develop a standard of life and living at some time which would be considered outside the limits which religion and society and the law have long established for the best welfare of government, it would be of the most material character to guide the court in its conclusions in determining whether a person who had ruthlessly violated that standard upon which good qualities are dependent should be the recipient of the highest privilege this government can confer—citizenship. The inquiry made in count 1 of the indictment would have a material bearing upon the credibility of the statement and testimony of the petitioner. State v. Coella, 3 Wash. 99, 28 Pac. 28; State v. Champoux, 33 Wash. 339, 74 Pac. 557; State v. Miller, 26 R. I. 282, 58 Atl. 882, 3 Ann. Cas. 943; State v. Park, 57 Kan. 431, 46 Pac. 713; U. S. v. Landsberg (C. C.) 23 Fed. 585; State v. Moran, 216 Mo. 550, 115 S. W. 1126; People v. Courtney, 94 N. Y. 490; Lang v. U. S., 133 Fed. 201, 66 C. C. A. 255.

The demurrer is overruled as to count 1 of the indictment and is sustained as to count 2.