## Ferenczi's Petition

*Milton J. Goodman,* for petitioner.
*William J. Cochrane,* for respondent.

BARTHOLD, J., January 22, 1940.—This matter comes before the court on the petition of Vilmos Ferenczi praying for an appropriate decree of this court establishing

his naturalization. At the hearing, petitioner testified, among other things, that he was born in Hungary on January 10, 1878, and came to the United States on June 18, 1901; that he filed his declaration of intention in this court several months after his arrival; that he was naturalized upon petition in this court on September 24, 1906, when 23 years of age; that his witnesses were Messrs. Degnan and McBride, both now deceased; that he received his naturalization certificate the same day; that he lived in the City of Bethlehem, Pa., from 1901 to 1932, when he moved to New York City; that he has been voting at every election since 1920 and that he did not return to Europe, except on one occasion in 1921 when he procured a United States passport on the strength of his naturalization certificate and went to Europe to get his son.

In opposition to the granting of the petition, the Government produced the records of this court from 1896 to September 27, 1906, showing no record of the "first papers" of petitioner. The court minutes for September 24, 1906, the date of the alleged naturalization, were also offered in evidence showing that petitioner was not among the sixty-odd persons naturalized on that day. It is uncontradicted that there is no court record of petitioner's naturalization in the Court of Common Pleas of Northampton County, although petitioner produced a paper purporting to be a naturalization certificate bearing the name of Thomas A. L. Hay, Prothonotary of the Court of Common Pleas of Northampton County, and issued to Vilmos Ferenczi under the seal of said court at Easton on September 24, 1906. It is to be noted that the certificate in question is one issued under the "Minor's Act" although petitioner was not a minor at the time and that the year of the declaration of intention is not set forth in the certificate in the space provided for such date.

The case raises the question of the power of this court to create a naturalization record nunc pro tunc. This question has been squarely answered in the negative by

the Supreme Court of the United States in the case of Gagnon v. United States, wherein it is held that a judgment of naturalization which has never been recorded, or, if recorded, the record of which has been lost, cannot be entered by a common-law court nunc pro tunc 33 years after its rendition, when no entry or memorandum appeared upon the record or files at the time the original judgment is supposed to have been rendered. The same principle has been adopted in Pennsylvania. In the case of Crew, Levick & Co. v. McCafferty, 124 Pa. 200, it was held that a court may amend its record so as to make it conform to the truth, even after the term has expired or writ of error lodged, yet it has no power to make an alteration which is not an amendment and is without anything upon the record to support it. The power to amend a record presupposes an existing record which is defective and must be distinguished from the power to create a record where there is nothing upon the files or records of the court. Since "naturalization is a judicial act": Spratt, Admx., v. Spratt, 29 U. S. (4 Peters) 393; Rump v. Commonwealth, 30 Pa. 475; Macoluso's Naturalization, 237 Pa. 132, 136; this court has the power in the interest of justice to correct its naturalization decrees and records to conform to the true facts, but it does not have the power to create a record nunc pro tunc where no record whatsoever theretofore existed. The rule is stated in the following terms in 1 Standard Pennsylvania Practice, sec. 358:

"Every court of record has supervisory and protecting charge over its records and the papers belonging to its files, and has the inherent right to cause its acts and proceedings to be correctly set forth in its records; and whenever it is properly brought to the knowledge of the court that a record made by the clerk does not correctly show the order or direction which was in fact made by the court at the time it was given, the court has authority to correct its record in accordance with the facts. A court may amend its record in the matter of clerical misprisions

so as to make it conform to the truth even after the term has expired and error has been brought. A court may amend its record by transferring the papers filed by mistake in a wrong action to the action in which they belong. However, to justify the amendments of a judicial record there must be something to amend by, and by this is understood something upon the files or records of the court."

Thus it has been held that a record is not subject to correction as to the alien's name claimed to be erroneous, in the absence of any entry or memorandum among the files of the court or in the office of the clerk establishing the alleged ·error: In re O'Sullivan, 137 Mo. App. 214, 117 S. W. 651; In re Holland (D. C. Pa. 1916), 237 Fed. 735; In re Perkins (D. C. N. Y. 1913), 204 Fed. 350. The court cannot make up the record nunc pro tunc and issue the certificate accordingly where the record fails to show the proceedings necessary to the issue of a certificate of naturalization: Matter of Desty (N. Y. 1880), 8 Abb. N. C. 250. A certificate of the clerk of the district court, reciting that the applicant has been duly admitted to citizenship, but failing to show any extract from the record, or minute of the action of the court, is not competent to show naturalization: Charles Green's Son et al. v. Salas (C. C. Ga. 1887), 31 Fed. 106. Naturalization cannot ordinarily be proved by parol: Charles Green's Son et al. v. Salas, supra; Bode v. Trimmer, Admr. (1890), 82 Calif. 513, 23 Pac. 187; Prentice v. Miller (1890), 82 Calif. 570, 23 Pac. 189; State ex rel. v. O'Hearn (1886), 58 Vt. 718, 6 Atl. 606; Dryden v. Swinburne (1882), 20 W. Va. 89; Boyd v. Nebraska et al., 143 U. S. 135. The best and usual proof of naturalization is a copy of the court record. Parol evidence of naturalization has been admitted in election contests, quo warranto proceedings, proceedings to vacate naturalization decrees procured by fraud or misrepresentation, and in proceedings where the question arises collaterally, and there are cases which hold that naturalization may be inferred from the fact

that for a long time the party voted, held office, and exercised all the rights and privileges of a citizen: Miller v. Berg, 190 Minn. 352, 251 N. W. 682; Boyd v. Nebraska et al., supra; Commonwealth ex rel. v. McHale, 11 Dist. R. 607; Commonwealth ex rel. v. McCormick, 17 Luz. L. R. Rep. 31; Macoluso's Naturalization, supra; Fay v. Taylor et al., 31 Misc. 32, 63 N .Y. Supp. 572. But we are of the opinion that these cases do not control the present case. We are not here concerned with a case wherein the question of citizenship arises, collaterally, but are requested as a court of original jurisdiction to set up a naturalization record nunc pro tunc when there is nothing in the court records upon which to predicate such a record.

We are aware of the cases in Pennsylvania which hold that a certificate of naturalization in due form and properly attested is sufficient evidence in the first instance that the individual named in it was duly examined and sworn in open court in the presence of some of the judges, according to the act of Congress, and that the certificate itself was regularly and lawfully issued, and that those who assert the contrary have the burden of proving the contrary: Commonwealth v. Leary, 1 Brewst. 270, 271; Commonwealth v. Paper et al., 1 Brewst. 263, 270. We point out, however, that these cases are predicated upon the issuance of a certificate "in due form and properly attested". The testimony in this case reveals that the certificate was not in due form in that it is a "Minor's Certificate" issued to one who by his own testimony was not a minor at the time, and bears no date of petitioner's declaration of intention. Furthermore, it was not properly attested, in that, according to the uncontradicted testimony of A. Thurman Schlabach, prothonotary, the signature thereon is not the signature of Thomas A. L. Hay, the prothonotary who held office at the time of the issuance of the certificate. It is also significant that the naturalization records of this court on the date of petitioner's purported naturalization do not contain his name, although upwards of sixty persons were naturalized on

that date and the records give every indication that they were carefully kept.

Citizenship is a privilege and not a right, and in matters of this kind it is well that we constantly bear in mind the following admonition of Archibald, P. J., in Santo Scola's Case, 8 Pa. C. C. 344, 346:

"In nothing are we so prone to fall into loose practice as in the matter of naturalization. The proceeding is necessarily ex parte in its character, and, at periodical times, admissions are allowed almost by the wholesale. I desire to speak with becoming modesty, but I think I am safe in saying that almost the only restraint upon naturalization is to be found in the conscientious firmness of the judges who are called upon to see that the law is properly administered."

The Government, upon the argument of this case, requested that, in the event of the denial of the petition, the court enter an appropriate decree canceling the naturalization certificate purportedly issued to Vilmos Ferenczi. We are of the opinion that the question of the cancellation of the naturalization certificate is not now before us, and that it is incumbent upon the Government to proceed under the Act of June 29, 1906, 34 Stat. at L. 596, sec. 15, as amended, or present to this court a petition praying for a rule to show cause why an order should not issue directing that the certificate of naturalization issued to Vilmos Ferenczi be delivered to the prothonotary for cancellation and that a decree annulling the same be entered by the court, if a cancellation of the certificate is desired.

For the reasons hereinabove stated, the petition is denied at the cost of petitioner without prejudice to the right of petitioner to file a citizenship petition under the tenth subdivision of section 4 of the Act of 1906, supra, pertaining to persons who prior to July 1, 1920, exercised the rights and duties of citizenship in good faith.